**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| **TRENT A. HOGUE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:07-CV-283-RBC** |
| | ) | |
| **CITY OF FORT WAYNE,** | ) | |
| **OFFICER KEVIN RAREY,** | ) | |
| **MENARD, INC. d/b/a MENARD'S,** | ) | |
| **OFFICER MATT HARRISON,** | ) | |
| **LT. ALLEN L. GOODMAN, and** | ) | |
| **MAJESTIC SECURITY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

### I.  INTRODUCTION

On August 5, 2006, Plaintiff Trent Hogue's trip to Menard's to exchange certain

plumbing parts purchased the day before culminated in his arrest for disorderly conduct and

resisting law enforcement.  After he was later acquitted of all charges, Hogue filed this action

against Menard, Inc., d/b/a Menard's; certain of its loss prevention personnel; two Fort Wayne

police officers, one of whom was also employed by Menard's as security; and the City of Fort

Wayne.  He advanced a host of claims against them, including excessive force under the Fourth

Amendment and 42 U.S.C. § 1983, a conspiracy claim under 42 U.S.C. § 1985; and false arrest,

false imprisonment, and malicious prosecution.[1]

On November 10, 2008, Defendants Menard's, Allen Goodman, and Majestic Security

---

[1] Subject matter jurisdiction arises under 28 U.S.C. § 1331.  Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting.

(the "Menard's Defendants") filed a motion for summary judgment (Docket # 34), and on that same day Defendants Fort Wayne Police Officer Kevin Rarey, Fort Wayne Police Officer Matt Harrison, and the City of Fort Wayne (the "City Defendants") did the same (Docket # 37). Hogue timely responded (Docket # 43-45), and Defendants promptly replied (Docket # 50, 54). Together with their reply, the City Defendants filed a motion to strike certain portions of Hogue's affidavit. (Docket # 51, 52.) On January 26, 2009, Hogue responded to the motion to strike (Docket # 55) and, with leave of Court, filed sur-responses to Defendants' summary judgment motions (Docket # 56-59). Defendants then filed timely sur-replies to the summary judgment motions. (Docket # 62, 63.) The City Defendants, however, did not file a reply to their motion to strike.

At this point, Hogue advances these claims: (1) a § 1985 conspiracy claim against the Menard's Defendants and Officer Rarey; (2) a state law false imprisonment or false arrest claim against the Menard's Defendants and Officer Rarey arising out of Hogue's first detention; (3) a state law false imprisonment or false arrest claim against all Defendants arising out of Hogue's second detention, together with a § 1983 false imprisonment or false arrest claim against Officers Rarey and Harrison; (4) a § 1983 malicious prosecution against Officer Rarey; and (5) a § 1983 excessive force claim against Officer Rarey.

In their motion for summary judgment, the Menard's Defendants contend that there simply is no evidence to support a § 1985 conspiracy claim against them and that they are immune from the false imprisonment or false arrest claim under the Indiana Shoplifting Detention Act. Hogue disagrees, asserting that his § 1985 conspiracy claim and state false imprisonment or false arrest claims against the Menard's Defendants and Officer Rarey are

indeed viable and that their assertion of immunity under the ISDA is misplaced.

The City Defendants claim that they are entitled to summary judgment because there was probable cause to arrest Hogue, the minimal force that was used during his arrest was reasonable, and Officers Rarey and Harrison are entitled to qualified immunity and immunity under the Indiana Tort Claims Act. They further contend that Hogue's malicious prosecution claim against Officer Rarey fails as a matter of law because he made no allegation that Officer Rarey acted improperly after his arrest. Hogue disputes the City Defendants' contention that the officers had probable cause to arrest him, used reasonable force, or are immune. He further argues that his § 1983 malicious prosecution claim against Officer Rarey is supportable.

For the reasons provided in this Opinion and Order, the Defendants' motion to strike and motions for summary judgment will each be GRANTED IN PART and DENIED IN PART. In order to determine which evidence will be considered in the summary judgment discussion, the Court will first address the City Defendants' motion to strike.

## II. THE CITY DEFENDANTS' MOTION TO STRIKE

### A. Applicable Legal Standard

Federal Rule of Civil Procedure 56 states that affidavits filed in support of summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e). "An affidavit not in compliance with Rule 56 can neither lend support to, nor defeat, a summary judgment motion." *Paniaguas v. Aldon Cos.*, No. 2:04-cv-468-PRC, 2006 WL 2568210, at *4 (N.D. Ind. Sept. 5, 2006) (citing *Zayre Corp. v. S.M. & R. Co.*, 882 F.2d 1145,

1148-49 (7th Cir. 1989); *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (7th Cir. 1989)).

"[W]hen considering a motion to strike portions of an affidavit in support of a motion for summary judgment, courts will only strike and disregard the improper portions of the affidavit and allow all appropriate recitations of fact to stand." *Id.*; *see also Stromsen v. Alumna Shield Indus., Inc.*, No. 89-C5036, 1993 WL 34727, at *4 (N.D. Ill. Feb. 8, 1993); *Toro Co. v. Krouse, Kern & Co.*, 644 F. Supp. 986, 989 (N.D. Ind. 1986); Charles Alan Wright, et al., *Federal Practice & Procedure* § 2738 (3d ed. 2006). Specifically, the following statements are not properly included in an affidavit and should be disregarded: (1) conclusory allegations lacking supporting evidence, *see DeLoach v. Infinity Broad.*, 164 F.3d 398, 402 (7th Cir. 1999); (2) legal argument, *see Pfeil v. Rogers*, 757 F.2d 850, 862 (7th Cir. 1985); (3) self-serving statements without factual support in the record, *see Shank v. William R. Hague, Inc.*, 192 F.3d 675, 682 (7th Cir. 1999); (4) inferences or opinions not "grounded in observation or other first-hand experience," *Visser v. Packer Eng'g Assocs., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991); and (5) mere speculation or conjecture, *see Stagman v. Ryan*, 176 F.3d 986, 995 (7th Cir. 1999).

### B. Discussion

The City Defendants first seek to strike a portion of paragraph 7 of Hogue's affidavit in which Hogue states that "the three of them threw [him] violently onto a checkout counter and handcuffed [him]." They contend that this statement contradicts Hogue's testimony in his criminal trial in which he stated that Officer Rarey, Officer Harrison, and Goodman "took [his] arm and they put 'em behind [his] back, then they put [him] on the cash register. They – not the cash register the cash aisle." (Trial Tr. 159.)

"As a general rule, the law of this circuit does not permit a party to create an issue of fact

by submitting an affidavit whose conclusions contradict prior deposition or other sworn testimony." *Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1055 (7th Cir. 2000) (quoting *Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 292 (7th Cir. 1996)); *see also Gates v. Caterpillar, Inc.*, 513 F.3d 680, 688 (7th Cir. 1996). Here, however, Hogue's statements in his affidavit and at his criminal trial do not contradict each other. Rather, Hogue simply goes into greater detail in his affidavit about the manner in which the three men handcuffed him, which is understandable considering that the violence of Hogue's arrest is crucial to the claims advanced in this case but was not at issue in his criminal trial. Indeed, a "party may attempt to clarify or augment (but not contradict) prior . . . testimony through affidavits." *Simmons v. Chicago Bd. of Educ.*, 289 F.3d 488, 492 (7th Cir. 2002).

Moreover, at his deposition, Hogue stated that the three men "threw [him] on a checkout lane on [his] . . . stomach." (Hogue Dep. 36.) Therefore, Hogue's description in his affidavit of the events surrounding his second detention is quite consistent with his prior deposition testimony. Consequently, the motion to strike is DENIED with respect to paragraph 7.

Next, the City Defendants seek to strike a portion of paragraph 9 of Hogue's affidavit in which Hogue states that his case went to trial and the jury found him not guilty of either charge. Defendants claim that this information is irrelevant, arguing that the disposition of criminal charges cannot be considered at the summary judgment stage.

Indeed, the ultimate disposition of Hogue's criminal charges may well be irrelevant in determining whether the officers had probable cause to detain and arrest Hogue, as they "were not facts within the officers' knowledge at the time of the arrest and thus [cannot] be considered . . . at the summary judgment stage." *Ochana v. Flores*, 347 F.3d 266, 272 (7th Cir. 2003).

However, Hogue is *also* bringing a malicious prosecution claim in this action, and one of the essential elements of that claim is the termination of criminal proceedings in his favor. *See Int'l Med. Group, Inc. v. Am. Arbitration Ass'n, Inc.*, 312 F.3d 833, 848 n.2 (7th Cir. 2002) (citing *Butt v. McEvoy*, 669 N.E.2d 1015, 1017 (Ind. Ct. App. 1996)). Therefore, contrary to the City Defendants' assertion, the disposition of Hogue's criminal charges is indeed relevant in this litigation, and therefore their motion to strike this information in paragraph 9 of Hogue's affidavit is DENIED.

Finally, the City Defendants seek to strike as irrelevant Hogue's statements in paragraph 13 of his affidavit that he "felt upset, racially profiled, and embarrassed"; that he thinks he was treated the way he was treated because of his race; and that "[he'd] been to other Menard's stores in the city and that's the only one that [he] saw a police officer working at – as if they are expecting problems at the southeast store." Defendants' motion will be DENIED with respect to Hogue's statement that he "felt upset" and "embarrassed", as it is relevant to the issue of damages. *See, e.g.*, *Hodges v. Rios,* No. 99 C 4137, 2000 WL 1700172, at *7 (N.D. Ill. Nov. 9, 2000) (reciting that some of the elements of compensable injury in a § 1983 action for injuries caused by deprivation of constitutional rights include emotional distress, humiliation, and personal indignity); *see also Crawford v. Garnier*, 719 F.2d 1317, 1324 (7th Cir. 1983). Moreover, Hogue's statement in this regard is "sufficiently based on [his] personal observations, knowledge, or feelings." *Feltner v. Partyka*, 945 F. Supp. 1188, 1191 n.1 (N.D. Ind. 1996) (denying defendant's motion to strike plaintiff's statements in her affidavit that she "was getting extremely upset" and "felt trapped").

Though Hogue's assertions that he felt "racially profiled" and that he thinks he was

treated the way he was treated because of his race may be relevant to his § 1985 conspiracy claim, these statements merely reflect Hogue's speculation about Defendants' motive for its actions, and therefore are outside of his personal knowledge. *See, e.g.*, *id.* Consequently, these statements will be stricken.

And, as Defendants argue, the last sentence in paragraph 13 concerning Hogue's observation about Menard's use of security in its stores is irrelevant to his claims. Furthermore, the phrase "as if they are expecting problems at the southeast store" is outside of Hogue's personal knowledge, as Hogue would not know Menard's intent with respect to its placement of police officers. *See, e.g.*, *Guzman v. Abbott Labs.*, 59 F. Supp. 2d 747, 757 (N.D. Ill. 1999) (striking portion of affidavit that speculates as to defendant's intent).

Therefore, Defendants' motion to strike is DENIED with respect to Hogue's statement in paragraph 13 that he "felt upset" and "embarrassed", but GRANTED with respect to his statement that he felt "racially profiled" and GRANTED with respect the last two sentences in paragraph 13 reflecting his views on Menard's motive for its actions and its security staffing.

## III. FACTUAL BACKGROUND[2]

On August 5, 2006, at approximately 6:00 p.m., Trent Hogue, a black male, visited the Menard's store at Southtown Crossing in Fort Wayne, Indiana, to exchange some plumbing parts that he had purchased there the day before. (Hogue Dep. 7, 9.) Hogue took the parts (some pipe and water lines) with him into the store in a white Menard's bag with his original receipt. (Hogue Dep. 9-11.)

---

[2] For summary judgment purposes, the facts are recited in the light most favorable to Hogue, the nonmoving party. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

Upon entering the store, Hogue went to the customer service counter where he waited in line about five minutes. (Hogue Dep. 8, 9, 12.) When it was his turn to be served, he pulled the pipe and his receipt out of the bag. (Hogue Dep. 12-13.) He spoke to assistant manager Kandi Pickard at the service counter and explained that he needed to exchange the pipes and the lines. (Hogue Dep. 12-13; *State of Ind. v. Hogue*, No. 02D04-0608-CM-5344, Trial Tr. ("Trial Tr.") 24.) She directed him to keep the items that he had brought with him, go find what he needed from the sales floor, and then bring everything up to the service counter to make the exchange. (Trial Tr. 24-25; Hogue Dep. 12-13.) At some point after assisting Hogue, Pickard left the customer service counter area. (Trial Tr. 32-33.)

Hogue spent two to three minutes on the sales floor selecting the items for the exchange. (Hogue Dep. 14; Defs.' Disk No. 6, File CD1760.06-6, time stamp 18:08:55-18:12:10.) While in the plumbing section, he took the pipe that he had purchased out of his bag and compared it to the size of the pipes on the shelf to make sure he picked out the right size. (Hogue Dep. 13-14.) He then put the purchased pipe back into his bag. (Hogue Dep.13-14.) He did not put any merchandise that he had not purchased into the bag. (Hogue Dep. 13-14.)

Majestic Security provides loss prevention officers to work as security at the Southtown Crossing Menard's store. (Boldt Aff. ¶ 2.) Allen Goodman was the loss prevention officer from Majestic on duty on the evening of August 5, 2006, serving as an in-store security floor walker who was monitoring the in-store surveillance video camera screens in the security room. (Boldt Aff. ¶ 2; Trial Tr. 26, 55; Def.'s Resps. to Req. for Admiss. Nos. 1-4.) Shortly after 6:00 p.m., Goodman called the store's general manager, Randy Boldt, and told him that he observed on camera a black male (Hogue) in the plumbing department who was placing items from a shelf

into a plastic Menard's bag. (Boldt Aff. ¶ 3.)  Boldt then reviewed the videotape, which showed a black male placing items from a shelf into a plastic Menard's bag and then walking toward the front of the store. (Boldt Aff. ¶¶ 3, 4.)  Boldt suspected that the man on the tape may have been shoplifting and asked Goodman to bring the male to the loss prevention room so that he could speak with him. (Boldt Aff. ¶ 4.)

Meanwhile, Hogue returned to the Menard's service counter after finding the correctly-sized parts that he needed. (Trial Tr. 42; Hogue Dep. 17; Defs.' Disk No. 34-35, File CD1760.06-034, time stamp 18:13:28-18:13:56.)  He placed the items he had purchased on the counter in one pile and the items that he had just selected in another pile. (Trial Tr. 42; Hogue Dep. 17; Defs.' Disk No. 34-35, File CD1760.06-034, time stamp 18:13:28-18:13:56.)  He then told the clerk who was working the counter, Nicole Phillips, "This is what I had, and this is what I need." (Trial Tr. 42; Hogue Dep. 17.)

However, as Hogue leaned over the counter, Goodman, a heavy-set white male who was dressed in a black shirt at the time, grabbed him by the arm and told him that he needed to ask him some questions. (Trial Tr. 42; Hogue Dep. 17-18, 62.)  Hogue initially pulled away from Goodman because he did not know who he was; Goodman then pulled out a badge but Hogue did not read it. (Hogue Dep. 18-19.)

Hogue explained to Goodman that he was exchanging the parts; nevertheless, Goodman responded that he needed to ask him some questions and instructed Hogue to get out of the line. (Hogue Dep. 19, 62.)  Hogue replied, "I didn't do anything, so what do you need to ask me?" but complied with Goodman's request to step out of line. (Hogue Dep. 19, 62.)  Goodman then escorted Hogue to Menard's loss prevention room, and Menard's security officer, Officer Kevin

Rarey, followed them. (Hogue Dep. 20.) Officer Rarey was an off-duty police officer with the Fort Wayne Police Department, but was in full police uniform at the time. (Trial Tr. 25-26, 97-98; Hogue Dep. 20.)

Pickard, the assistant manager to whom Hogue first spoke, was in the middle of the store at the time Hogue was escorted to the loss prevention room. (Trial Tr. 34.) When she realized he was the customer she had recently assisted at the customer service desk, she told Boldt that she had let him in with the bag of merchandise in order to exchange parts.[3] (Trial Tr. 34.) She states that she told the same thing to both Goodman and Officer Rarey. (Trial Tr. 34.)

Nonetheless, Hogue was detained in the security room for about ten minutes. (Trial Tr. 101; Hogue Dep. 21-22; Defs.' Disk No. 32-33, File CD1760.06-32, time stamp 18:16:29-18:23:23.) The first five minutes Hogue was detained by Officer Rarey, after which Goodman returned to the room with Boldt and Hogue's bag and parts. (Trial Tr. 35; Hogue Dep. 21-22; Defs.' Disk No. 32-33, File CD1760.06-32, time stamp 18:16:29-18:19:58.) Hogue was then detained for approximately five more minutes while Officer Rarey, Goodman, and Boldt talked to him and watched the store video. (Trial Tr. 101; Hogue Dep. 22-23.)

During this time, Officer Rarey, Goodman, and Boldt lectured Hogue that he "should have went [sic] to the service desk" before walking back to the sales floor to find the parts he needed. (Hogue Dep. 23; Hogue Aff. ¶ 3.) Hogue admits that he was upset when he was detained in the loss prevention room, as he felt that he was being accused of stealing. (Trial Tr. 162; Hogue Aff. ¶¶ 3, 13; Hogue Dep. 22.) Nevertheless, Hogue maintained his composure and

---

[3] The record is unclear about when Pickard actually conveyed this information, as Boldt testified that she informed him *after* Hogue was already detained in the loss prevention room. (Trial Tr. 88-89.)

explained to them his version of the events.[4] (Trial Tr. 22-23; Hogue Aff. ¶¶ 10, 11.)  When Hogue initially asked if he was free to go, Goodman and Boldt continued to lecture him, and Officer Rarey snapped "shut up"; Officer Rarey also threatened to arrest him. (Hogue Dep. 22-23, 25.)  Eventually, Hogue once more asked if he could leave, at which point he was told "yes" and given his bag. (Hogue Dep. 25.)  When Hogue exited the loss prevention room, he pushed the door open with such force that the mounting plate at the top of the door popped and the door frame cracked. (Trial Tr. 103.)

Hogue had to begin the exchange process all over so he returned to the customer service desk with the bag. (Hogue Dep. 26; Defs.' Disk No. 34-35, File CD1760.06-35, time stamp 18:23:55.)  Now the bag contained the items he had purchased as well as the items from the sales floor, as Defendants had placed these items in the bag together. (Hogue Dep. 26.)  During this third trip to the customer service desk, Hogue was again waited on by Phillips. (Trial Tr. 42, 46; Hogue Dep. 27.)  She had seen part of what had taken place and thus apologized to Hogue, and he was cordial with her. (Trial Tr. 42, 46.)  She then began the exchange process, which took about five minutes. (Hogue Dep. 27, 31.)  Meanwhile, Officer Rarey stood approximately thirty feet away, watching Hogue the whole time. (Hogue Dep. 27-28.)

As the exchange took place, Hogue asked Officer Rarey, "Why are you watching me?" (Hogue Dep. 28.)  Officer Rarey did not respond but got on his radio as if calling someone. (Hogue Dep. 28.)  Hogue then said to Officer Rarey in a tone of voice that other customers could

---

[4] Defendants disagree with Hogue's portrayal of his demeanor when he was in the loss prevention room, asserting that Hogue was yelling, swearing, and calling Goodman a "fat fuck." (Affs. For Probable Cause.)

not hear, "You need to go help that fat fuck that doesn't know how to do his job."[5] (Hogue Dep. 39.)  Officer Rarey again did not respond. (Hogue Dep. 41.)  Once Hogue completed the exchange, he left the service counter and walked down the main aisle towards the exit of the store. (Hogue Dep. 28.)  Officer Rarey then began following Hogue, maintaining a distance of about three feet. (Hogue Dep. 28-30.)

After Officer Rarey followed him for about forty feet, Hogue, feeling harassed, asked Rarey for his badge number. (Hogue Dep. 30-33.)  Officer Rarey responded by asking for Hogue's name, to which Hogue responded,  "I didn't do anything, so you don't need my name." (Hogue Dep. 32; Trial Tr. 154-55.)  Officer Rarey replied, "That's ok.  I'll get it when you get out to your car." (Hogue Dep. 32.)  Because Hogue feared that Officer Rarey would follow him to his car and then pull him over, Hogue told him that he did not drive, even though he did indeed drive to Menard's. (Hogue Dep. 32.)

Officer Rarey gave Hogue his badge number and instructed him, "I need you out of this store," to which Hogue responded, "I'm going."[6] (Hogue Dep. 33.)  As they walked, Officer Rarey put his hand on Hogue's back, pushing him forward. (Pl.'s Disk No. 3, File CD1760.06-1, time stamp 18:32:00-18:32:08.)  At one point, Officer Rarey took Hogue's left arm and put it behind his back and tried to knock his left foot out from underneath him. (Hogue Dep. 33; Hogue Aff. ¶ 6; Pl.'s Disk No. 3, File CD1760.06-1, time stamp 18:31:19-18:32:25.)  In doing so Officer Rarey lost his balance and fell to the ground twice. (Hogue Dep. 33-34; Hogue Aff. ¶ 6;

---

[5] Though Hogue testifies that he made this statement in a tone of voice that other customers could not hear, he admits that Officer Rarey, who was standing thirty feet away from him at the time, heard him, as well as the Menard's employee at the service counter. (Hogue Dep. 39-41.)

[6] Defendants contend that Hogue said "fuck you" when Office Rarey asked him to leave the store. (Affs. For Probable Cause.)

Disk No. 3, File CD1760.06-1, time stamp 18:31:19-18:32:25.) At some point, Hogue also went down. (Hogue Aff. ¶ 6; Pl.'s Disk No. 3, File CD1760.06-1, time stamp 18:31:19-18:32:25.)

Then, Goodman and Officer Matt Harrison, who was in plain clothes and in the store shopping, joined in. (Trial Tr. 138; Hogue Dep. 35-36.) Officer Rarey, Goodman, and Officer Harrison then violently threw Hogue onto a checkout counter on his stomach and handcuffed him.[7] (Trial Tr. 159; Hogue Dep. 36, 42; Hogue Aff. ¶ 7; Pl.'s Disk No. 4, File CD1760.40, time stamp 18:32:57-18:33:23.) Once Hogue was handcuffed, Officer Rarey squeezed or twisted the handcuffs even tighter.[8] (Trial Tr. 159; Hogue Dep. 42; Hogue Aff. ¶ 8.) When Hogue told him that he was "breaking" his arm, Officer Rarey whispered, "I told you I'd get you," and repeatedly told him to "stop resisting." (Hogue Dep. 42; Hogue Aff. ¶ 8; Trial Tr. 159.)

Though Hogue continued to complain that Officer Rarey was hurting him, at no time while in the store did Hogue fight, threaten, yell, scream, attempt to flee, or physically resist the officers.[9] (Hogue Dep. 42; Hogue Aff. ¶¶ 10, 11.) He does admit, however, that after the handcuffing he "was moving to stop the torque on [his] arm," but emphasizes in doing so that he was not fighting or resisting Officer Rarey. (Hogue Dep. 42.) As a result of Officer Rarey's force during the handcuffing, Hogue suffered pain, bruising, and contusions to his right wrist, though ultimately he never sought medical attention for these complaints. (Hogue Aff. ¶ 12;

---

[7] Officer Harrison testified at Hogue's criminal trial that when he saw Officer Rarey grab Hogue's arm, he knew Rarey had physical control of Hogue. (Trial Tr. 138.) Officer Harrison states that he then joined Officer Rarey when he saw Hogue resist the first initial flinch. (Trial Tr. 138.)

[8] Officer Rarey testified that after Hogue complained that the handcuffs were too tight, he told Hogue that he would loosen them "if he behaved." (Trial Tr. 111.) Officer Rarey states that he did indeed then loosen them at some point. (Trial Tr. 111.)

[9] Of course, Defendant's version of the facts differ from Hogue's on this point, as Defendants testify that Hogue was yelling profanities in the store and disrupting other customers. (*See, e.g.*, Trial Tr. 28-31, 38, 56, 58-59, 72, 84, 86, 89, 105, 112, 131.)

Hogue Dep. 51.)

Hogue was then taken to the front of the store where he talked with Officer Harrison and general manager Boldt; during this conversation, which lasted about ten minutes, Officer Rarey kept a hold of Hogue's handcuffs.[10] (Hogue Dep. 43.) Hogue was then taken to the Allen County Jail where he was booked on charges of disorderly conduct and resisting arrest. (Hogue Dep. 48; Hogue Aff. ¶ 9.) Officer Rarey completed the probable cause affidavits upon which the charges were based. (Affs. For Probable Cause.) An Allen Circuit Superior Court Judge determined that probable cause existed for Hogue's arrest. (Affs. For Probable Cause.)

As a result of Officer Rarey's representations, the Fort Wayne Prosecutor's Office filed charges against Hogue. (Hogue Aff. ¶ 9.) Following an arraignment hearing on August 8, 2006, the case went to a jury trial on August 9, 2007. (Hogue Aff. ¶ 9). The jury found Hogue "not guilty," and all charges against him were dismissed. (Trial Tr. 194-95; Hogue Aff. ¶ 9.) On October 15, 2007, Hogue filed the instant action. (Docket # 1.)

## IV. MOTION FOR SUMMARY JUDGMENT

### A. Standard of Review

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P 56(c); *Payne*, 337 F.3d at 770. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ballance v. City of Springfield*, 424 F.3d 614, 617 (7th Cir. 2005).

---

[10] Oddly, at one point in his deposition, Hogue admits that Officer Harrison did nothing wrong and claims that he is not suing him, complaining instead about Officer Rarey's conduct. (Hogue Dep. 47.)

When ruling on a motion for summary judgment, "a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Payne*, 337 F.3d at 770. The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.*; *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770.

A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true," as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.* However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771; *Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007) (instructing that in determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts.").

### B. Discussion

1.  Section 1985(3) Conspiracy Claim

Hogue alleges that the Menard's Defendants and Officer Rarey conspired to subject him to false arrest, malicious prosecution, and excessive and unreasonable force, and they move for summary judgment on this claim. The parties agree that Hogue advances his conspiracy claim under 42 U.S.C. § 1985(3). (Mem. of Law in Supp. of Menard, Inc., Allen L. Goodman and Majestic Security's Mot. for Summ. J. ("Menard's Defs. Supp. Mem.") 13-14; Pl.'s Mem. in

Supp. of Resp. to Defs. Menard, Inc., Lt. Allen Goodman, and Majestic Security's Mot. for Summ. J. ("Pl.'s Resp. Br. to Menard's Defs.") 9-10.)

"To establish a claim for civil conspiracy under § 1985(3), a plaintiff must demonstrate (1) the existence of a conspiracy, (2) a purpose of depriving a person or class of persons of equal protection of the laws, (3) an act in furtherance of a conspiracy, and (4) an injury to person or property or a deprivation of a right or privilege granted to U.S. citizens." *Green v. Benden*, 281 F.3d 661 (7th Cir. 2002) (citing *Hernandez v. Joliet Police Dep't*, 197 F.3d 256, 263 (7th Cir. 1999)). "The plaintiff also must show some racial, or otherwise class-based, invidiously discriminatory animus behind the conspirators' actions, and that the conspiracy aimed at interfering with rights that are protected against private, as well as official, encroachment." *Id*. (citing *Majeske v. Fraternal Order of Police, Local Lodge No. 7*, 94 F.3d 307, 311 (7th Cir. 1996)).

"To establish the existence of a conspiracy, a plaintiff must show that the conspirators agreed to inflict injury upon him; in other words, that they acted with a single plan, the general nature and scope of which was known to each conspirator. *Id*. (citing *Hernandez*, 197 F.3d at 263). "Agreement may be inferred from circumstantial evidence, but only if it is sufficient to permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives." *Id*. (citing *Hernandez*, 197 F.3d at 263).

Here, there is simply *no* evidence to support even an inference that Defendants conspired in a single plan to detain and arrest Hogue or to inflict injury or harm upon him. Though Hogue is black and the individual Defendants are Caucasian, Hogue does not even argue this point in

the context of his § 1985(3) claim and does not point to any evidence that suggests Defendants targeted him because of his race. (Pl.'s Resp. Br. to Menard's Defs. 9-10); *see, e.g.*, *Alexander v. City of South Bend*, 320 F. Supp. 2d 761, 778-79 (N.D. Ind. 2004) (granting summary judgment on plaintiff's § 1985(3) conspiracy claim where aside from presenting the undisputed fact that plaintiff was black, plaintiff offered no evidence that defendants' investigation stemmed from any racial animosity). Simply, Hogue has failed to produce any evidence that suggests a "meeting of the minds" occurred among the Defendants for purposes of violating his constitutional rights. *See id.* "Mere allegations of conspiracy are insufficient to withstand a motion for summary judgment." *Williams v. Vill. of Hillside*, No. 95 C 7415, 1998 WL 167281, at *3 (N.D. Ill. 1998) (citing *House v. Belford*, 956 F.2d 711, 720 (7th Cir. 1992)).

Therefore, Defendants' motion for summary judgment will be GRANTED with respect to Hogue's 1985(3) conspiracy claim.

2.       State Law False Imprisonment or False Arrest Claim Arising Out of Hogue's First Detention

Defendants also seek summary judgment on Hogue's state law false imprisonment or false arrest claim arising out of his first detention, claiming that the brief detention was expressly authorized by the Indiana Shoplifting Detention Act ("ISDA"), Ind. Code § 35-33-6-2. (Menard's Defs. Supp. Mem. 11-13.) Hogue disagrees, arguing that he was detained without probable cause and therefore the immunity of the ISDA does not apply.[11]

The ISDA was a response by the Indiana General Assembly to "a long, continuing

---

[11] Hogue concedes that he is not advancing a § 1983 false imprisonment or false arrest claim against Officer Rarey nor a state law false imprisonment or false arrest claim against the City with respect to his first detention, arguing instead that Officer Rarey was acting in his capacity as a Menard's employee at the time. (*See* Pl.'s Resp. to Menard's Defs. 11-12.)

epidemic of shoplifting and was designed to provide some measure of immunity from liability for a merchant whose agent detains someone suspected of theft." *Haltom v. Bruner & Meis, Inc.*, 680 N.E.2d 6, 9 (Ind. Ct. App. 1997). "[T]he merchant's limited authority to detain a person suspected of theft is triggered when the merchant's agent has probable cause to believe that a theft has occurred or is occurring on or about the store." *Id.* (citation omitted); *Duvall v. Kroger Co.*, 549 N.E.2d 403, 407 (Ind. Ct. App. 1990) ("For purposes of the shoplifting statute, probable cause is cause to believe a specific person had or was committing a theft of the merchant's property."). If probable cause is present, the merchant's detention of the suspect is lawful. *Duvall*, 549 N.E.2d at 407. "Lawful detention cannot constitute false imprisonment."[12] *Id.*

"Probable cause is normally an issue for the jury's determination." *Id.* at 405-06. That is, "[t]he probable cause determination must be made by a jury 'if there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them.'" *Chelios v. Heavener*, 520 F.3d 678, 686 (7th Cir. 2008) (quoting *Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993)); *see also Duvall*, 549 N.E.2d at 406 (instructing that "summary judgment should not be granted where material facts are disputed or conflicting inferences arise"). "However, if the facts are undisputed, probable cause is for the court to determine as a matter of law." *Duvall*, 549 N.E.2d at 406.

---

[12] As background, "[p]roof of the absence of probable cause is essential to the plaintiff's cause of action for false arrest . . . ." *Conwell v. Beatty*, 667 N.E.2d 768, 775 (Ind. Ct. App. 1996) (citation omitted); *see also Row v. Holt*, 864 N.E.2d 1011, 1016 (Ind. 2007) (articulating that "false arrest requires absence of probable cause"). And, false imprisonment under Indiana law is "the unlawful restraint upon one's freedom of movement or the deprivation of one's liberty without consent." *Earles v. Perkins*, 788 N.E.2d 1260, 1264 (Ind. Ct. App. 2003). "False imprisonment may be committed by words alone, or by acts alone, or by both and by merely operating on the will of the individual, or by personal violence, or both." *Dietz v. Finlay Fine Jewelry Corp.*, 754 N.E.2d 958, 967 (Ind. App. 2001) (citation omitted). The Indiana Supreme Court has stated that "inasmuch as [the plaintiff's] claim for false imprisonment stems from his alleged false arrest, [the court] need not make a separate analysis for the former." *Row*, 864 N.E.2d at 1016 n.4 (citation omitted).

Here, one important fact regarding the first detention is disputed. That is, the record is unclear as to precisely when Pickard told Boldt, Officer Rarey, and Goodman that she had actually instructed Hogue to take his purchased items with him into the store. Hogue contends that Pickard informed Boldt *before* Hogue was ever taken to the loss prevention room, and there is room in the record for such an inference; Defendants, however, contend that they learned this fact afterward. (*Compare* Trial Tr. 34, *with* Trial Tr. 88-89.) This disputed fact is relevant to the issue of probable cause, and thus the probable cause determination must go to a jury. *See Chelios*, 520 F.3d at 686.

Moreover, there is room for a difference of opinion concerning the reasonable inferences to be drawn from the undisputed facts concerning Hogue's first detention. *See Duvall*, 549 N.E.2d at 405 ("Even if facts are not in dispute, summary judgment is inappropriate if conflicting inferences arise."). The undisputed facts are these: Through his monitoring of the security cameras, Goodman observed Hogue in the plumbing department of the store placing items from a shelf into a plastic Menard's bag and then Hogue walking toward the front of the store. After consultation with Boldt, Goodman left the security room and approached Hogue at the service counter, where Hogue had placed his purchased water lines and the unpurchased water lines in two piles. Goodman then grabbed Hogue's wrist, stating that he needed to ask him some questions. After a brief exchange of words, Goodman and Officer Rarey then escorted Hogue to the loss prevention room for questioning.

Defendants argue that Hogue's act of placing items from the shelf into his bag, even if it ultimately was only his purchased items, is "more than sufficient probable cause to briefly stop Hogue . . . ." (Menard's Defs. Supp. Mem. 10.) Indeed, Defendants' assertion is not without

merit, as "concealment of an item provides a reasonable inference of intent to commit theft." *Duvall*, 549 N.E.2d at 406.

Nonetheless, Defendants ignore the fact that before Goodman actually detained Hogue, Goodman learned additional information. *See generally Irvin v. Kaczmaryn*, 913 F. Supp. 1190, 1199 (N.D. Ill. 1996) ("[T]he continuation of even a lawful arrest may violate the Fourth Amendment if the police subsequently discover facts negating probable cause[.]").  That is, at the time Goodman approached Hogue at the customer service desk, he obviously knew that Hogue had not left the store but instead had approached the customer service center.  Goodman also likely observed that Hogue had plumbing merchandise spread out on the counter in front of him and that Hogue was engaged in a discussion with the Menard's clerk.  At this point, there is room for a difference of opinion concerning the reasonable inferences to be drawn from these facts. *See Chelios*, 520 F.3d at 686; *Duvall*, 549 N.E.2d at 405.  That is, a person of reasonable caution who saw Hogue place merchandise from a shelf into a bag on a security video and then observed him shortly thereafter at the customer service desk with merchandise spread out on the counter in front of him and talking with a store clerk could reasonably conclude (as could a jury) that it was clear that Hogue was merely exchanging some merchandise.

In short, because of disputed facts and competing reasonable inferences, the probable cause determination concerning Hogue's first detention will be reserved to a jury. *See Chelios*, 520 F.3d at 686; *Duvall*, 549 N.E.2d at 405-06.  As a result, Defendants' motion for summary judgment on Hogue's state law claim of false imprisonment or false arrest arising from his first detention will be DENIED.

3.      State Law and § 1983 False Imprisonment or False Arrest Claims Arising From Hogue's Second Detention

As a result of his second detention, Hogue also advances a state law false imprisonment or false arrest claim against all Defendants, as well as a § 1983 false imprisonment or false arrest claim against Officers Rarey and Harrison.[13] Because a material factual dispute exists concerning the existence of probable cause, summary judgment on these claims must be denied as well.

As with Hogue's first detention, Defendants assert that summary judgment is appropriate on Hogue's false imprisonment or false arrest claim arising from his second detention because they had probable cause to detain him for disorderly conduct and resisting arrest.[14] "Probable cause for arrest is demonstrated by facts and circumstances known to the arresting officer which

_____

[13] Hogue is not advancing any § 1983 claim against the City of Fort Wayne. (*See* Pl.'s Resp. to Menard's Defs. 7, 10; Pl's Resp. to City Defs. 16.)

[14] The Indiana disorderly conduct statute, Ind. Code § 35-45-1-3, provides: "A person who recklessly, knowingly, or intentionally: (1) engages in fighting or in tumultuous conduct; (2) makes unreasonable noise and continues to do so after being asked to stop; or (3) disrupts a lawful assembly of persons; commits disorderly conduct, a Class B misdemeanor."  The term "tumultuous conduct" as used in the statute means "conduct that results in, or is likely to result in, serious bodily injury to a person or substantial damage to property." Ind. Code § 35-45-1-1.
     And, Indiana's resisting law enforcement statute, Ind. Code § 35-44-3-3(a), states:

A person who knowingly or intentionally:

        (1) forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of the officer's duties;

        (2) forcibly resists, obstructs, or interferes with the authorized service or execution of a civil or criminal process or order of the court; or

        (3) flees from a law enforcement officer after the officer has, by visible or audible means, including operation of the law enforcement officer's siren or emergency lights, identified himself or herself and ordered the person to stop;

commits resisting law enforcement, a Class A misdemeanor . . . .

would warrant a person of reasonable caution and prudence in believing that the accused had committed or was committing a criminal offense." *N.J. ex rel. Jackson v. Metro. Sch. Dist. of Washington Twp.*, 879 N.E.2d 1192, 1195 (Ind. Ct. App. 2008) (citation omitted). As discussed *supra*, "[p]roof of absence of probable cause is essential to a recovery for false arrest." *Gomez v. Adams*, 462 N.E.2d 212, 222 (Ind. Ct. App. 1984); *see also Chelios*, 520 F.3d at 685-86 (instructing that "[p]robable cause is an absolute defense to a claim of wrongful arrest asserted under section 1983 against police officers").

Here, Defendants contend that they had probable cause to arrest Hogue because he was "yelling & swearing" in the store despite Officer Rarey's repeated instructions to lower his voice, and because Hogue said "Fuck you!" when Officer Rarey asked him to leave. (Affs. For Probable Cause; *see also* Trial Tr. 105, 107, 109, 116-18, 120-22.) Defendants also state that Hogue resisted arrest. (Affs. For Probable Cause; *see also* Trial Tr. 105, 107, 109, 116-18, 120-22.)

According to Hogue's telling of the story, however, he used the "f" word just one time during his visit to Menard's and that was when, after asking Officer Rarey why he was watching him, he stated, "You need to go help that fat fuck that doesn't know how to do his job." (Hogue Dep. 42; Hogue Aff. ¶ 5.) Hogue denies that he made this statement in an unreasonably loud tone (though he was thirty feet from Officer Rarey at the time), and contends that only Officer Rarey and the store clerk could hear it.

Indeed, Hogue's statement seems far afield of "fighting words" – words which are "stated as a personal insult to the hearer in language inherently likely to provoke a violent reaction." *Brown v. State*, 576 N.E.2d 605, 607 (Ind. Ct. App. 1991). Rather, the nature of

Hogue's statement seems more akin to a criticism of the manner in which Officer Rarey was performing his duties (or the way that Goodman had performed his) – that is, it was in the nature of a political expression. *See, e.g., Price v. State*, 622 N.E.2d 954, 964-65 (Ind. 1993); *Shoultz v. State*, 735 N.E.2d 818, 825-27 (Ind. Ct. App. 2000). In that regard, there is no evidence that Hogue's comment caused any more than a "mere annoyance" to Officer Rarey at the time. *See Price*, 622 N.E.2d at 964-65; *Shoultz*, 735 N.E.2d at 825-27.

And, Hogue denies the remainder of Defendants' contentions, stating that at no time during his visit to Menard's did he "yell, scream, verbally threaten anyone, physically threaten anyone, fight, or do anything illegal." (Hogue Aff. ¶ 9.) In fact, Hogue specifically emphasizes that at the time he was physically detained by Officer Rarey, Goodman, and Officer Harrison, he "did not fight, try to flee, physically or forcibly resist, or do anything physically threatening to anyone." (Hogue Aff. ¶ 11.) In that regard, he explained that Officer Rarey simply lost his balance and fell down two times in the process (Hogue Dep. 33), and that once he was detained and Officer Rarey squeezed the handcuffs tighter, he moved only to "stop the torque on [his] arm" due to the extreme pain from the tight handcuffs (Hogue Dep. 42).

As with Hogue's first detention, a material factual dispute exists with respect to whether probable cause existed for Hogue's arrest for disorderly conduct and resisting law enforcement. Therefore, subject to the qualified immunity analysis *infra* with respect to Officers Rarey and Harrison, Defendants' motion for summary judgment on Hogue's § 1983 and state law false imprisonment or false arrest claims arising from his second detention will be DENIED.[15]

---

[15] Furthermore, the City Defendants' initial claim of immunity under the Indiana Tort Claims Act ("ITCA") from Hogue's state law false imprisonment or false arrest claims fails to save the day for these Defendants. The law enforcement immunity section of the ITCA, Ind. Code § 34-13-3-3, provides that a "governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from the following: . . .

4.      § 1983 Malicious Prosecution Claim

Hogue clarifies in his response brief that he is advancing a malicious prosecution claim under § 1983 and the Fourth Amendment solely against Officer Rarey. (Pl.'s Mem. in Supp. of Resp. to Defs. City of Fort Wayne, Officer Kevin Rarey and Officer Matt Harrison's Mot. for Summ. J. ("Pl.'s Resp. Br. to City Defs.") 14-15; Pl.'s Resp. Br. to Menard's Defs. 10.)  He has abandoned any claim of malicious prosecution against the other Defendants.

As background, in order to state a claim for malicious prosecution against police officers under § 1983, a plaintiff "must do more than merely claim that they arrested and detained him without probable cause." *Snodderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892, 901 (7th Cir. 2001) (citing *Sneed v. Rybicki*, 146 F.3d 478, 481 (7th Cir. 1998)).  "[R]ather, he must allege that the officers committed some improper act after they arrested him without probable cause, for example, that they pressured or influenced the prosecutors to indict, made knowing misstatements to the prosecutor, testified untruthfully, or covered up exculpatory evidence." *Id.* (citing *Reed v. City of Chicago*, 77 F.3d 1049, 1053-54 (7th Cir. 1996)).

Here, the sole basis of Officer Rarey's argument for summary judgment on the malicious prosecution claim is that Hogue "made no allegation that the defendants committed an improper act after they arrested him." (The Defs. the City of Fort Wayne, Officer Kevin Rarey, and Officer Matt Harrison's Mem. in Supp. of Their Mot. for Summ. J. 13.)  Officer Rarey's assertion, however, is belied by the record, as according to Hogue's version of the facts, after the arrest

_____

(8) The adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations), *unless the act of enforcement constitutes false arrest or false imprisonment.*" (emphasis added); *see also Miller v. City of Anderson*, 777 N.E.2d 1100, 1104 (Ind. Ct. App. 2002) (stating that a claim for false imprisonment or false arrest "fall outside the parameters of the immunity conferred by the ITCA").  Therefore, the ITCA does not immunize the City Defendants from Hogue's state law claims of false imprisonment or false arrest.  Apparently, the City Defendants agree, as they abandoned this assertion in their reply brief. (*See* The Defs. the City of Fort Wayne, Officer Kevin Rarey, and Officer Matt Harrison's Reply in Supp. of Their Mot. for Summ. J. 8-9.)

Officer Rarey submitted probable cause affidavits containing some untruths and testified untruthfully at Hogue's criminal trial. *See, e.g.*, *Snodderly*, 239 F.3d at 901 (articulating that plaintiff's allegations that detectives gave perjured testimony or falsified information or evidence would adequately support a malicious prosecution action); *Sneed*, 146 F.3d at 481 (same); *Reed*, 77 F.3d at 1053 (same). Indeed, but for those acts by Officer Rarey after Hogue's arrest, Hogue seemingly would not have been prosecuted at all.

Therefore, Officer Rarey's argument for summary judgment in this instance is unpersuasive, and thus his motion for summary judgment will be DENIED. At this juncture Hogue's § 1983 malicious prosecution claim will survive.[16]

5.   <u>§ 1983 Excessive Force Claim</u>

Hogue also advances a § 1983 claim of excessive force against Officer Rarey, and Officer Rarey moves for summary judgment on this claim.[17] Again, when crediting Hogue's version of the events, which the Court must do at this stage of the proceedings, Officer Rarey's motion must be denied.

A claim of "excessive force . . . in the course of making an arrest . . . [is] properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Graham v.*

---

[16] Neither Officer Rarey nor Hogue touch upon what is perhaps the real question in this case – whether Hogue can even maintain a Fourth Amendment malicious prosecution claim under § 1983, an issue that has drawn considerable discussion in the Seventh Circuit. *See, e.g.*, *Bielanski v. County of Kane*, 550 F.3d 632, 638 (7th Cir. 2008); *Freeman v. Guy*, No. 08-1568, 2008 WL 5227195, at *4-5 (7th Cir. Dec. 16, 2008) (unpublished); *Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 683-85 (7th Cir. 2007); *Newsome v. McCabe*, 256 F.3d 747, 750-51 (7th Cir. 2001); *see also Leathem v. LaPorte*, No. 3:07-CV-220 PPS, 2008 WL 4224940, at *3 (N.D. Ind. Sept. 10, 2008); *Bishop v. City of Indianapolis*, No. 1:06-cv-1064-SEB-TAB, 2008 WL 820188, at *12-14 (S.D. Ind. Mar. 24, 2008). That issue remains for further discussion at the final pretrial conference. Possibly, however, the § 1983 malicious prosecution claim, if not barred, is at least superfluous since both of Hogue's § 1983 and state law false imprisonment or false arrest claims survive. *See Bishop*, 2008 WL 820188, at *14.

[17] Hogue initially also advanced a § 1983 excessive force claim against Officer Harrison, but Hogue abandoned this claim against Officer Harrison in his response brief. (*See* Pl.'s Resp. Br. to City Defs. 7-8).

*Connor*, 490 U.S. 386, 388 (1989); *see also Scott*, 127 S. Ct. at 1776. This gives rise to the overarching question, "whether [the officer's] actions were objectively reasonable." *Scott,* 127 S. Ct. at 1776. Answering this question "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

At bottom then, the inquiry focuses on whether the officer's actions were "'objectively reasonable' in light of the facts and circumstances confronting [him]." *Id*. at 397. This means that the Court must view the matter "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. Consequently, a "police officer's use of force is unconstitutional if, judging from the totality of the circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest." *Payne*, 337 F.3d at 778 (citation omitted); *see also Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985) (stating that the court must look to whether the totality of the circumstances justified the seizure).

Here, when crediting his version of the events, Hogue's excessive force claim is viable. As recited *supra*, Hogue claims that he did not "fight, try to flee, physically or forcibly resist, or do anything physically threatening to anyone." (Hogue Aff. ¶ 11.) In fact, Hogue states that "the whole time [he] was in the store dealing with Goodman and Rarey, when they told [him] to do something, [he] obeyed . . . ." (Hogue Aff. ¶ 11.)

Yet, according to Hogue, Officer Rarey "grabbed [him] and tried to take [him] to the ground by knocking [his] feet out from under [him]." (Hogue Aff. ¶ 6; Hogue Dep. 33; Trial Tr. 159.) Officer Rarey then lost his balance and fell down to his knees twice. (Hogue Dep. 33, 35.)

Goodman and Officer Harrison then joined Officer Rarey, and the three came at Hogue (Hogue Dep. 36; Trial Tr. 159); Hogue then put his hands in the air and said: "I didn't do anything." (Hogue Dep. 36.) Nonetheless, the three violently threw Hogue on the checkout lane onto his stomach and handcuffed him. (Hogue Dep. 36; Hogue Aff. ¶ 7; Trial Tr. 159.)

Officer Rarey then "squeezed the handcuffs so that they would be tighter." (Hogue Aff. ¶ 8; Hogue Dep. 42; Trial Tr. 159.) Hogue explains that this was extremely painful and that he told Officer Rarey that he was "breaking [his] arm." (Hogue Aff. ¶ 8; Hogue Dep. 42; Trial Tr. 159.) Officer Rarey's only response was to whisper to Hogue: "I told you I'd get you." (Hogue Aff. ¶ 8; Hogue Dep. 42.) Hogue continued to complain to Officer Rarey that the handcuffs were hurting him, but Officer Rarey did not immediately loosen them. (Hogue Aff. ¶ 8.) As a result, Hogue suffered pain and bruising to his right wrist. (Hogue Aff. ¶ 12; Hogue Dep. 51.) Hogue ultimately, however, never sought any medical attention.

The Seventh Circuit Court of Appeals has concluded that on occasion tight handcuffs can indeed constitute excessive force. *See, e.g., Tibbs v. City of Chicago*, 469 F.3d 661, 666 (7th Cir. 2006) (recognizing the feasibility of an excessive force claim based on overly tight handcuffs); *Payne*, 337 F.3d at 779-80 (collecting twelves cases in which courts Court found excessive force due to tight handcuffs); *Herzog v. Vill. of Winnetka, Ill.*, 309 F.3d 1041, 1043-44 (7th Cir. 2002) (recognizing the "long line of tight-handcuff cases" and concluding that officer's failure to loosen chafing handcuffs was excessive force, but acknowledging that there is contrary authority). And, the Seventh Circuit has further instructed that a "significant injury is not required for Fourth Amendment excessive force claims . . . ." *Rambo v. Daley*, 68 F.3d 203, 207 n.2 (7th Cir. 1995); *see also Herzog*, 309 F.3d at 1043 ("The Fourth Amendment protects against

unreasonable seizures, not seizures that 'shock the conscience' or cause 'severe injuries.'" (quoting *Lester v. City of Chicago*, 830 F.2d 706, 712 (7th Cir. 1987)).

Here, Hogue states that the handcuffs were "extremely painful" and that he accurately reflected the severity of his pain by telling Officer Rarey not once, *but multiple times*, that he was "breaking [his] arm." *Cf. Tibbs*, 469 F.3d at 666 (concluding that tight handcuffs did not constitute excessive force where plaintiff complained of pain only once to officer and did not communicate his degree of pain); *Cusack v. City of Des Plaines*, No. 06 C 2507, 2007 WL 2484325, at *3-4 (N.D. Ill. Aug. 29, 2007) (same). Upon learning that Hogue was in extreme pain, Officer Rarey did not promptly loosen the handcuffs but instead simply whispered, "I told you I'd get you."[18]

And there is more than just tight handcuffing in this case. Officer Rarey, Officer Harrison, and Goodman "violently threw" Hogue on his stomach onto the checkout lane when effectuating the arrest even though he was allegedly not resisting. *Compare Payne*, 337 F.3d at 774 (finding that use of force by police officer was excessive where tight handcuffing was coupled with other force); *Herzog*, 309 F.3d at 1043-44 (same); *Lester*, 830 F.2d at 714 (same), *with Tibbs*, 469 F.3d at 666 (declining to find excessive force where plaintiff's claim relied solely on tight handcuffing). "Even 'one violent push and poke' will constitute excessive force when there is no provocation." *DuFour-Dowell v. Cogger*, 969 F. Supp. 1107, 1120 (N.D. Ill. 1997) (quoting *Lanigan v. Vill. of East Hazel Crest, Ill.*, 110 F.3d 467, 475-76 (7th Cir. 1997));

---

[18] Of course, "the Fourth Amendment's 'reasonableness' standard is a test of 'objective reasonableness,' precluding an inquiry into an officer's subjective intent." *O'Toole v. Kalmar*, No. 85 C 7380, 1990 WL 19542, at *5 (N.D. Ill. Feb. 23, 1999). Thus, whether Officer Rarey "acted 'maliciously or sadistically' has no bearing on whether a use of force is 'reasonable' under the Fourth Amendment." *Id.* (citing *Graham*, 109 S. Ct. at 1872). That is, "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Graham*, 109 S. Ct. at 1872.

*Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996) ("[P]olice officers do not have the right to shove, push, or otherwise assault innocent citizens without any provocation whatsoever.").

The Supreme Court has instructed that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.'" *Payne*, 337 F.3d at 779 (quoting *Graham*, 490 U.S. at 396-97). "Nevertheless, even given this flexibility, Officer [Rarey's] force in arresting a [man] who was not threatening to harm the police officer or anyone else at the scene, was not resisting or evading arrest, was not attempting to flee, and was charged with such minor offenses, was not objectively reasonable." *Id*.

Therefore, Defendants' motion for summary judgment on Hogue's § 1983 excessive force claim against Officer Rarey will be DENIED.

6.    Qualified Immunity

Finally, Officers Rarey and Harrison argue that summary judgment should be granted in their favor on Hogue's § 1983 claims of false imprisonment or false arrest and excessive force because they are entitled to qualified immunity.

"The doctrine of qualified immunity shields from liability public officials who perform discretionary duties." *Chelios*, 520 F.3d at 690-91. "Qualified immunity shields from liability police officers who act in ways they reasonably believe to be lawful." *Id*. (internal quotation marks and citation omitted). Thus, it "protects those officers who make a reasonable error in determining whether there is probable cause to arrest an individual." *Id*.

 "The Supreme Court of the United States has articulated a two-part test for qualified

immunity: (1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendants violated a constitutional right; (2) whether that constitutional right was clearly established at the time of the alleged violation." *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).[19] "A plaintiff may discharge the burden of showing that the constitutional right was clearly established by showing that there is 'a clearly analogous case establishing a right to be free from the specific conduct at issue' or that 'the conduct is so egregious that no reasonable person could have believed that it would not violate clearly established rights.'" *Id.* (citing *Smith v. City of Chicago*, 242 F.3d 737, 742 (7th Cir. 2001); *Saffell v. Crews*, 183 F.3d 655, 658 (7th Cir. 1999)).

        a.     <u>Officer Rarey</u>

As concluded *supra*, when taking the facts of this case in the light most favorable to Hogue, Officer Rarey detained and arrested Hogue without probable cause. To review, Hogue claims that he did not fight, threaten, yell, scream, use profanity more than once, attempt to flee, physically resist the officers, or do anything illegal. We believe that case law would have put Officer Rarey on notice that Hogue had a right to be free from detention and arrest under such circumstances. *See, e.g.*, *Chelios*, 520 F.3d at 690-91 (finding that no probable cause for an arrest occurred where plaintiff claimed he did not make physical contact with the officer and did not conduct himself in a disorderly manner or impede the officer in his duties); *Pourghoraishi v. Flying J., Inc.*, 449 F.3d 751, 762 (7th Cir. 2006) (concluding that an officer did not have probable cause to arrest where the plaintiff did not raise his voice, make unreasonable noise, or

---

[19] Recently, in *Pearson v. Callahan*, 129 S. Ct. 808 (2009), the Supreme Court reconsidered the two-step procedure set forth in *Saucier* and concluded that while the sequence is often appropriate, it should no longer be regarded as mandatory in all cases. It stated that the district courts should have the discretion to decide whether the two-step procedure is worthwhile in particular cases. *Id.*

otherwise engage in any behaviors prohibited by the disorderly conduct statute); *Payne*, 337 F.3d at 775-78 (same); *Morfin v. City of East Chicago*, 349 F.3d 989, 997-1000 (7th Cir. 2003) (same).

In that same regard, Hogue also defeats Officer Rarey's qualified immunity defense with respect to his excessive force claim, as "it would have been sufficiently clear to a reasonable officer that he used excessive force in the situation he confronted." *Payne*, 337 F.3d at 780. That is, at the time of Hogue's arrest, "it was clearly established that 'police officers do not have the right to shove, push, or otherwise assault innocent citizens without any provocation whatsoever.'" *Id*. (quoting *Clash*, 77 F.3d at 1048). "It was also well established that it was unlawful to use excessively tight handcuffs and violently yank . . . arrestees who were not resisting arrest, did not disobey the orders of a police officer, did not pose a threat to the safety of the officer or others, and were suspected of committing only minor crimes." *Id*. (collecting cases); *see also Herzog*, 309 F.3d 1041, 1043 (7th Cir. 2002) (collecting cases and reciting that a refusal to loosen a plaintiff's chafing handcuffs is an instance of excessive force).

Therefore, Officer Rarey is not entitled to qualified immunity regarding Hogue's § 1983 claims of false imprisonment, false arrest, or excessive force.

b.     Officer Harrison

The question of qualified immunity with respect to the § 1983 claim of false imprisonment or false arrest against Officer Harrison, however, comes out differently. A reasonable police officer who witnessed Officer Rarey assert physical control over Hogue while escorting him toward the exit of the store (Trial Tr. 138), and then saw Officer Rarey fall to the ground twice and Hogue also go down, could believe that Officer Rarey was acting on probable

cause and therefore step in to assist him to effectuate the arrest. *See, e.g., Duran v. Sirgedas*, 240 Fed. App'x 104, 116 (7th Cir. 2007) (unpublished) (stating that officer who did not witness the initial dispute but arrived in response to a call for back-up support had qualified immunity because the other officers' conduct at the scene implied that probable cause existed); *Adeszko v. Degnan*, No. 05-C-4589, 2006 WL 3469541, at *7 (N.D. Ill. Nov. 29, 2006) (finding that insofar as an officer assisted a colleague in an arrest that was already underway, he was protected from liability because he could have reasonably relied upon his colleague's actions as a basis for probable cause); *Carr v. Vill. of Richmond*, No. 96 C 50203, 1999 WL 626773, at *6 (N.D. Ill. July 9, 1999) (same).

In that regard, "[a] late-arriving officer may assist in an arrest already in progress when there is no basis for questioning the legality of that arrest." *Perkins v. Daley*, No. 87 C 9756, 1989 WL 4213, at *2 (N.D. Ill. Jan. 19, 1989). Here, Hogue has presented no evidence from which a trier of fact could conclude that Officer Harrison knew or should have known that Officer Rarey did not have probable cause to arrest him. *See id.* Without such evidence, Hogue's § 1983 claim against Officer Harrison cannot survive summary judgment. *See id.*

In sum, qualified immunity protects Officer Harrison from liability, and therefore summary judgment will be GRANTED in his favor with respect to the § 1983 claim of false imprisonment or false arrest.[20]

## VI. CONCLUSION

For the foregoing reasons, the motion to strike filed by Defendants Officer Kevin Rarey, Officer Matt Harrison, and the City of Fort Wayne (Docket # 51) is GRANTED IN PART and

---

[20] Of course, as concluded *supra*, the state law false imprisonment or false arrest claim against Officer Harrison survives.

DENIED IN PART as set forth in this Opinion and Order.

The motion for summary judgment filed by Defendants Menard's, Allen Goodman, and Majestic Security (Docket # 34) and the motion for summary judgment filed by Defendants Officer Kevin Rarey, Officer Matt Harrison, and the City of Fort Wayne (Docket # 37) are each GRANTED IN PART and DENIED IN PART in that all claims are dismissed except for the following, which survive:

(1)     as to Defendants Menard's, Majestic Security, and Allen Goodman, state law false imprisonment or false arrest claims arising out of both the first and second detention;

(2)     as to Defendant Officer Kevin Rarey, state law false imprisonment or false arrest claims arising out of both the first and second detention, a § 1983 false imprisonment or false arrest claim arising out of the second detention, a § 1983 malicious prosecution claim, and a § 1983 excessive force claim;

(3)     as to Defendant Officer Matt Harrison, a state law false imprisonment or false arrest claim arising out of the second detention; and

(4)     as to Defendant City of Fort Wayne, a state law false imprisonment or false arrest claim arising out of the second detention.

SO ORDERED.

Enter for February 23, 2009.

S/ Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge